## CITY OF WEST PALM BEACH v. STATE OF FLORIDA, et al.
### No. 38384.

Circuit Court, Palm Beach County.

April 4, 1958.

Egbert Beall and C. Robert Burns, both of West Palm Beach, for petitioner.

Phil D. O'Connell, West Palm Beach, for respondents.

JAMES R. KNOTT, Circuit Judge.

This case involves the validity of a proposed $4,350,000 bond issue of the city of West Palm Beach to finance the construction of a large development on city-owned land fronting on Lake Worth, comprising a marina with dock facilities for 200 or more boats, a shopping center, a recreation building with a civic auditorium, restaurant and club areas, and landscaped parking grounds. The project also includes three groups of buildings similar to motels, containing 160 units and collectively described as a "boatel," intended primarily for the use of the boating public but available also to the general public. The land to be occupied by the proposed boatel is located on the eastern sides of three blocks extending from 2nd Street to 5th Street, adjacent to the downtown business section of the city. Approximately $350,000 of the proceeds of the bond issue would be used to retire defaulted outstanding bonds issued in 1947 to finance a presently existing dock facility at the same location, which has proved a financial failure.

The city proposes to lease the marina and associated facilities to Flagler Marine Center Corporation, a private corporation for profit, for a period of thirty years (the life of the bond issue) at an annual rental of $290,000, with provision, under certain conditions, for an extension of the lease for 69 years at an annual rental of $30,000, or purchase of the property by the lessee corporation. The annual rental payments provided for the initial 30-year lease period are approximately the same as the yearly costs of meeting the payments of principal and interest due under the bond issue. The lessee corporation would act as a builder of the project and contribute the sum of $1,000,000 to its construction costs.

In the event the rental payments received by the city prove insufficient to meet the amounts due on the bonded indebtedness, the city pledges its revenues from occupational license taxes and from electric and gas franchises (although not from ad valorem taxes), and under the provisions of its ordinance regarding the project, is charged with the duty to increase its occupational license taxes, if necessary, so that the proceeds thereof would equal the yearly amount payable for principal and interest on the bond debt.

The estimated construction cost of the housing units constituting the boatel is $1,746,000, and of the remainder of the project, $2,213,000. The estimated net annual income from the boatel is $320,000, and from the other operations, $129,500.

Although it is pertinent to mention estimated costs and income, the wisdom and economic feasibility of the project are not for the court to decide. Panama City v. State, Fla., 93 So. 2d 608. It might be noted, in passing, however, that the evidence submitted at the bond validation hearing indicates encouraging possibilities as to its financial success, and that the good faith, competence and vision of the city authorities are not questioned. The issue before the court relates solely to whether the proposed bond issue is authorized by the laws of the state of Florida. Several questions have been presented and argued regarding its validity.

For the bond issue to be valid, the project must involve and serve a public and municipal purpose, within the accepted judicial interpretation of that term. As stated in McQuillin on Municipal Corporations, Vol. 15 (3rd Ed.), page 516, "a municipality has no power to expend money or incur indebtedness for other than a public purpose. The purpose of a bond issue, therefore, must be municipal and public, as distinguished from private, and even the state legislature itself cannot authorize the issuance of bonds for the latter purpose."

While in effect conceding that the construction of the docking facilities constituting the marina proper would be a proper municipal purpose, the state contends in the present case that the proposed housing units, among other services, are not in nature a proper municipal or public purpose, and that their inclusion serves to invalidate the whole project. Under the law as laid down by the Supreme Court of Florida, the city would lack the authority to construct or operate facilities of this nature, City of Clearwater v. Caldwell, Fla., 75 So. 2d 765; State v. Town of North Miami, Fla., 59 So. 2d 779, unless they should be required to insure the success of the main undertaking, the marina, and are a necessary adjunct thereto, Panama City v. State, supra.

The Clearwater case involved the right or power of the city of Clearwater to lease for 50 years, for profit or as an investment for the city, to a private individual for private gain to him, certain land owned by the city. The lessee proposed to use the land for the operation of a hotel or apartment house. The Supreme Court declared the project to be unauthorized by law, stating in part as follows—

"We do not find that the City of Clearwater has been granted the authority by the Legislature, directly or indirectly, to construct and operate a hotel or apartments, or that the same has been declared by the Legislature to be for a municipal purpose.

"In Florida the Legislature has plenary control over municipalities subject to such restrictions as may be found in the State or United States Constitutions, but if a doubt exists as to whether a statute authorizes a municipality to exercise a certain power, then that doubt should, as a matter of law, be resolved by the courts against the municipality.\*\*\*

"Appellants contend that the City of Clearwater has the power to lease its lands for hotel and apartment house purposes for a private gain because it will serve a municipal purpose, but the Legislature has not so declared, or granted, any such power. It may be argued that it is desirable for the City of Clearwater to be granted the power by the Legislature to enter into the real estate business and lease its property for hotels, drug stores, department stores, grocery stores, clothing stores, shoe stores and other such enterprises, but the Legislature has not attempted any such delegation of power. Such a change in policy may well threaten the entire free enterprise system. If such a change in policy can be brought

about in this case, with reference to hotels, by judicial decree or opinion, why not extend the policy to all private business. Why not extend it to all municipalities and counties, with reference to manufacturing plants, and every other enterprise now existing under the free enterprise system***?

"The Courts have no authority to change the policy with reference to municipal government as it has existed heretofore and adopt any such revolutionary policy. Such a change in policy can only be brought about by legislative action in some cases or by action of the people in approving such change by the adoption of a constitutional amendment, in others."

In the Panama City case cited above, our Supreme Court approved the issuance of bonds for construction of two marinas in Panama City with facilities which included a city hall, civic auditorium, and concessions buildings containing shops to be leased by the municipality to private corporations and individuals, somewhat similar to the proposed shopping center in the present case. The court held that the evidence showed the shops to be a necessary adjunct to the successful operation of the marinas, and "an incident to the main or primary purpose and for the convenience of those who use * * * the facilities for a public purpose." The court concluded that the construction of the concessions buildings did not destroy the public nature of the project nor prevent the issuance of bonds therefor.

Applying the principles followed by our Supreme Court in the Panama City case, it may be conceded that the proposed shopping center in the project under consideration, involving spaces for some 20 stores to serve the convenience of the boating public, could be considered a proper incident to the operation of the marina. But the 160-unit housing facility, the estimated income from which is more than double that of all the other operations combined, is another matter.

The record contains testimony supporting the city's contention that nearby on-shore housing is desirable, or needed, for the success of a modern marina, in order to allow boat owners to leave their cramped quarters. There is little or no testimony in the record regarding the present existence and availability of housing accommodations near the marina site; but the court can and should take judicial notice of conditions as they actually exist. Gate City Garage v. City of Jacksonville, Fla., 66 So. 2d 653. The court takes notice of the fact that within a short distance from the proposed marina, which, as stated, adjoins the downtown business section

of the city, there are several hotels; in fact, a rather large hotel lies within easy view of the premises, and a substantial portion of the hotel facilities in the city are located within a few hundred yards of the proposed project. The question is presented as to whether under these circumstances the convenience of the boaters necessitates the proposed housing units and causes them to be essential to the successful operation of the marina.

The court finds that the presence of the existing housing and hotel accommodations in the vicinity of the marina site negatives the proposition that the proposed housing facility is required to insure the success of the marina and constitutes a necessary adjunct thereto. A different conclusion might be reached if the marina were to occupy a site distant from any housing accommodations. It should be noted that the fact, if such it is, that the marina proper needs the financial assistance which might be provided by the income from a housing-unit operation, in order to be economically feasible, is not material. If the City were justified in constructing a commercial project of that nature merely in order to furnish financial aid to another operation serving a public and municipal purpose, it would follow that it could lawfully build hotels or motels in an entirely different section of the city and use the income and profits therefrom to meet a deficit arising from the operation of any of its municipal functions.

The finding and conclusion of the court is that the proposed housing units, or boatel, would not serve a proper public or municipal purpose, and that its inclusion as an integral part of the marina renders the project and the ordinance purporting to authorize the same unlawful. The court must therefore decline to validate the proposed bond issue, and dismiss the petition of the city for that purpose. Having reached this conclusion, it is unnecessary to consider other questions presented.

It is ordered, adjudged and decreed that the petition of the city for the validation of said bond issue be and the same is hereby dismissed.